1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

| | |
|---|---|
| GUIDO BINI, | |
| Plaintiff, | CASE NO. C16-5460 BHS |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| CITY OF VANCOUVER, et al., | |
| Defendants. | |

13

14

15

16

17

This matter comes before the Court on the motion to dismiss (Dkt. 9) of City of Vancouver ("City") and Officer Sandra Aldridge ("Officer Aldridge") (collectively "Defendants"). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated herein.

18

**I. PROCEDURAL HISTORY**

19

20

21

22

On June 9, 2016, Plaintiff filed his complaint against Defendants claiming violations of constitutional rights actionable under 42 U.S.C. § 1983, a violation of Washington's Criminal History Privacy Act (RCW 10.97), malicious prosecution, false arrest, false imprisonment, and negligence. Dkt. 1. On September 1, 2016, Defendants

1  filed their motion to dismiss. Dkt. 9. On September 19, 2016, Plaintiff responded. Dkt.

2  11. On September 23, 2016, Defendants replied. Dkt. 13.

3  ## II. FACTUAL BACKGROUND

4      In early 2014, Officer Aldridge was monitoring jail communications between

5  Plaintiff and Garrett Smith. Dkt. 1 at 2. Plaintiff and Garrett Smith were critical of

6  Officer Aldridge and her investigation into Garrett Smith's criminal activity, which

7  ultimately resulted in Garrett Smith's conviction for second degree assault and second

8  degree attempted murder of his wife, Sheryl Smith. *Id.*; Dkt. 9-1.

9      Around the time police arrested Garret Smith, Plaintiff's girlfriend published and

10  maintained a webpage called "Garret's Voice." Dkt. 1 at 3. The website was highly

11  critical of Officer Aldridge, the Vancouver Police Department, and their work on Garrett

12  Smith's case. *Id.* Based on the content of the website and Plaintiff's jail communications

13  with Garrett Smith, Officer Aldridge started investigating Plaintiff for cyberstalking in

14  violation of RCW 9.61.260. *Id.*

15      On March 29, 2014, Officer Aldridge went to Plaintiff's home and issued a

16  warning regarding the webpage. *Id.* The webpage was not removed or changed. *Id.* at 4.

17  At some unspecified time, Officer Aldridge issued a "Be on Look Out" warning (the

18  "BOLO"), a probable cause statement, and a criminal complaint for Plaintiff's arrest in

19  the police computer system. *Id.* at 5. On May 7, 2014, Officer Aldridge arrested Plaintiff

20  for felony cyberstalking in violation of RCW 9.61.260(3). *Id.* at 4. Felony cyberstalking

21  under RCW 9.61.260(3) requires a previous conviction of a crime of harassment as

22  defined under RCW 9A.46.060 as a mandatory element, while cyberstalking as a gross

1  misdemeanor under RCW 9.61.260(1) does not. RCW 9.61.260. Plaintiff has not been

2  convicted of a crime of harassment as defined under RCW 9A.46.060. Dkt. 1 at 4.

3      Plaintiff alleges that Officer Aldridge knew that Plaintiff had not previously been

4  convicted of a crime of harassment and that she withheld this information from the

5  prosecutor and the court to obtain the probable cause determination. *Id.* Plaintiff spent an

6  unspecified number of days and nights in jail. *Id.* On May 12, 2014, the County

7  Prosecutor's Office moved to drop the charge against him for felony cyberstalking. *Id.*

8      After the charges were dropped, Officer Aldridge continued to pursue prosecution

9  of Plaintiff. *Id.* On July 3, 2014, Officer Aldridge met with the Vancouver City Attorney

10  to ask that the City prosecute Plaintiff. *Id.* The City Attorney declined, and stated he

11  would revisit the issue after Officer Aldridge made a supplemental report. *Id.* at 5. He

12  also said that if the City pursued the matter, it would only request a court summons and

13  not an arrest warrant. *Id.*

14      Officer Aldridge did not remove the BOLO, Probable Cause Statement, or

15  Criminal Complaint from the police system after Plaintiff was released on May 12, 2014.

16  *Id.* at 5. On October 27, 2014, three other city police officers arrested Plaintiff pursuant to

17  the information that Officer Aldridge failed to remove from their computer system. *Id.*

18  On the way to the Jail, the other officers contacted Officer Aldridge to inform her that

19  they had arrested Plaintiff under the outstanding BOLO. *Id.* Officer Aldridge informed

20  the other officers that Plaintiff had already been arrested and that the information should

21  have been removed from their system. *Id.* The officers then immediately returned

22

1  Plaintiff to his home. *Id.* On November 10, 2014, the City Attorney reached a decision

2  not to file charges against Plaintiff for cyberstalking. *Id.* at 6.

3      On March 25, 2015, Officer Aldridge faxed to Sheryl Smith's attorney two non-

4  redacted police incident reports she had authored for her investigation and arrest of

5  Plaintiff. *Id.* Officer Aldridge sent the reports to assist Sheryl Smith's attempt to renew an

6  anti-harassment order against Plaintiff. *Id.* The incident reports included non-redacted

7  personal identifiers, including Plaintiff's date of birth, physical description, driver's

8  license number, address, and phone number. *Id.*

9      At some unspecified time, Plaintiff filed complaints with the City of Vancouver

10 Police Department regarding Officer Aldridge and the above described facts. *Id.* The City

11 of Vancouver has taken no action regarding his complaints. *Id.*

12                          **III. DISCUSSION**

13 **A.    12(b)(6) Standard**

14      Motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of

15 a cognizable legal theory or the absence of sufficient facts alleged under such a theory.

16 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material

17 allegations are taken as admitted and the complaint is construed in the plaintiff's favor.

18 *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss,

19 the complaint does not require detailed factual allegations but must provide the grounds

20 for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause

21 of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must allege

22 "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). The Court, however, may consider documents not attached to the complaint "if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (internal quotation marks omitted). Also, "under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Id.* at 689 (internal quotation marks omitted).

**B.   Municipal Liability**

The City moves to dismiss Plaintiff's § 1983 claims against it. Dkt. 9 at 5–9. The City argues that Plaintiff has failed to allege sufficient facts to support a theory of municipal liability for the acts of Officer Aldridge. *Id.*

"While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). To state a claim against a municipality under § 1983, a Plaintiff must allege sufficient facts to support a reasonable inference that the execution of a policy, custom, or practice was the "moving force" that resulted in the deprivation of his constitutional rights.[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).

---

[1] Defendants have not asserted that any of Plaintiff's § 1983 claims fail to adequately allege an underlying constitutional deprivation. Instead, the City only asserts that Plaintiff fails to plead sufficient facts to support a theory of municipal liability under § 1983. Accordingly, the Court will not assess whether Plaintiff has stated any underlying deprivations, whether Officer Aldridge is entitled to qualified immunity based on the facts stated in the complaint, or whether

1    There are three established scenarios in which a municipality may be liable for

2    constitutional violations under § 1983. "First, a local government may be held liable

3    'when implementation of its official policies or established customs inflicts the

4    constitutional injury.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th

5    Cir. 2012) (quoting *Monell*, 436 U.S. at 708). Second, Plaintiff can prevail on a § 1983

6    claim against the City by identifying acts of omission, such as a pervasive failure to train

7    its employees, "when such omissions amount to the local government's own official

8    policy." *Id*. Finally, the City "may be held liable under § 1983 when 'the individual who

9    committed the constitutional tort was an official with final policy-making authority' or

10   such an official 'ratified a subordinate's unconstitutional decision or action and the basis

11   for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–

12   47 (9th Cir. 1992) (internal quotation marks and citations omitted)).

13       For the reasons set forth below, the Court finds that Plaintiff has failed to allege

14   sufficient facts to support a theory of municipal liability under § 1983.

15       **1.    Implementation of Official Policy or Practice**

16       Plaintiff has alleged no customs or policies that, when implemented, acted as the

17   moving force behind Officer Aldridge's conduct. "A 'policy or custom' must generally

18   be one adopted and expressly set forth, but a municipal policy 'may [also] be inferred

19   from widespread practices or evidence of repeated constitutional violations for which the

20   errant municipal officers were not discharged or reprimanded.'" *Morales v. Fry*, C12-

21   ───────────────────────────────

22   Plaintiff has standing to assert a First Amendment right associated with the publication and
maintenance of "Garrett's Voice."

2235-JCC, 2014 WL 1230344, at *13 (W.D. Wash. Mar. 25, 2014) (quoting *Nadell v. Las Vegas Metro. Police Dep't.*, 268 F.3d 924, 929 (9th Cir. 2001)). At the pleading stage, Plaintiff must plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself" and "factual allegations that . . . plausibly suggest an entitlement to relief . . . ." *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

The alleged constitutional deprivations upon which Plaintiff premises his § 1983 claims are threefold. First, Plaintiff alleges that he was arrested by Officer Aldridge without probable cause on May 7, 2014. Second, Plaintiff alleges that he was wrongfully arrested on October 27, 2014, because of Officer Aldridge's failure to remove the BOLO incident to his previous arrest. Third, Plaintiff alleges that his arrest by Officer Aldridge violated his right to associate with Garrett Smith and his girlfriend's right to publish the website "Garrett's Voice."

To support his § 1983 claim against the City, Plaintiff merely recites that the City "had in force and effect policies, regulations or practices which if followed would likely result in the violation of the constitutional rights of Plaintiff and others." Dkt. 1 at 7. However, this cannot satisfy the pleading standard in *Twombly*, and the Ninth Circuit has indicated that more is required. *See Cyr v. Pierce Cty.*, C16-0430 RSM, 2016 WL 2855272, at *7 (W.D. Wash. May 16, 2016) (citing *AE ex rel. Hernandez*, 666 F.3d at 637; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). For instance, Plaintiff could adequately plead a claim by describing a policy or practice, a series of transactions, or some pattern of misconduct to suggest that an official policy, when implemented, acted

as the moving force behind the alleged misconduct of Officer Aldridge. *See Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013), *aff'd sub nom. Sandoval v. Cty. of Sonoma*, 591 Fed. Appx. 638 (9th Cir. 2015), *opinion amended and superseded on denial of reh'g and aff'd*, 599 Fed. Appx. 673 (9th Cir. 2015). However, having failed to do so, Plaintiff has not pushed his formulaic recitation across the line of conceivability into the realm of plausibility. *See Twombly*, 550 U.S. at 570.

### 2. Failure to Train

To allege municipal liability under § 1983 for failure to train, Plaintiff must allege: (1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right. *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Under this standard, [Plaintiff] must allege facts to show that the [Defendants] disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quotation marks omitted).

1    Plaintiff has alleged that the City "failed to properly train its officers on matters of

2    probable cause for arrest, procedures for arrest and enforcement and cyber stalking laws."

3    Dkt. 1 at 7. Plaintiff's factual allegations are limited only to his own arrests and the

4    isolated misconduct of Officer Aldridge. Ninth Circuit precedent suggests this cannot

5    support a § 1983 claim that the City has failed to train its officers on probable cause or

6    arrest procedures. *Id.*; *McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 806 (E.D. Cal.

7    2016) ("Alleging that training [for arrest procedures] is 'deficient' or 'inadequate'

8    without identifying a specific inadequacy is conclusory and does not support a plausible

9    claim.") (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009)).

10   *See also Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 932 (9th Cir. 2001) ("[N]or

11   can [municipal] liability be predicated on the isolated sporadic events . . . ."); *Booke v.*

12   *Cty. of Fresno*, 98 F. Supp. 3d 1103, 1128 (E.D. Cal. 2015) ("[A] plaintiff generally must

13   show other instances of peace officers violating constitutional rights in order to show

14   deliberately indifferent training."). Absent allegations of specific shortcomings in the

15   training of City police officers or facts that might place the City on notice that

16   constitutional deprivations were likely occur, Plaintiff has not adequately pled a § 1983

17   claim against the City for failure to train.

18       **3.    Ratification**

19       The mere allegation that an officer was not reprimanded or provided with

20   additional training cannot support a theory of ratification. *Morales v. Fry*, C12-2235-

21   JCC, 2014 WL 1230344, at *14 (W.D. Wash. Mar. 25, 2014); *Clouthier v. Cnty. of*

22   *Contra Costa*, 591 F.3d 1232, 1253–54 (9th Cir. 2010) (holding that a failure to

1  discipline employees, without more, was insufficient to establish ratification).

2  "Ratification . . . generally requires more than acquiescence." *Sheehan v. City & Cty. of*

3  *San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds sub*

4  *nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015). "Rather, to

5  state a section 1983 claim under a ratification theory, a plaintiff must sufficiently allege

6  that a policymaker 'made a deliberate choice to endorse' the . . . unlawful actions."

7  *Diamond v. United States*, ED CV 14-01922-VBF, 2015 WL 11215851, at *9 (C.D. Cal.

8  May 15, 2015) (quoting *Sheehan*, 743 F.3d at 1231).

9        Plaintiff does not allege that a specific City official with policy-making authority

10  condoned Officer Aldridge's alleged conduct or her bases for it. Instead, Plaintiff merely

11  alleges that the City "took no action regarding ALDRIDGE's misconduct," Dkt. 1 at 6,

12  and argues that such a failure to reprimand supports a theory of ratification. Dkt. 11 at

13  11–12 (citing *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001); *Christie v. Iopa*, 176 F.3d

14  1231 (9th Cir. 1999); *Henry v. Cty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997*), opinion

15  amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998)). However, in each case

16  Plaintiff cites for his position, potential municipal liability was premised on a failure to

17  discipline *plus* either the approving conduct of a policy-maker or a pattern of similar

18  constitutional violations following notice to the municipality. *See Gomez*, 255 F.3d 1118;

19  *Christie*, 176 F.3d 1231; *Henry*, 132 F.3d 512.

20        As stated in *Henry*, "[w]hen a county *continues to turn a blind eye to severe*

21  *violations of inmates' constitutional rights*—despite having received notice of such

22  violations—a rational fact finder may properly infer the existence of a previous policy or

1    custom of deliberate indifference." 137 F.3d at 1372 (emphasis added). Plaintiff has

2    failed to allege actions by the City suggesting that anyone ratified Officer Aldridge's

3    conduct. He was released on the City's own motion after his first arrest. Dkt. 1 at 4. He

4    was immediately returned to his home, prior to even arriving at jail, when officers

5    discovered that his second arrest was a mistake. Dkt. 1 at 4–5. Also, Plaintiff has alleged

6    no pattern of similar constitutional violations or any constitutional deprivation that

7    occurred after he filed a complaint with the City.[2] The alleged conduct of Officer

8    Aldridge and the City's failure to reprimand, without more, cannot support a theory of

9    municipal liability under § 1983.

10        Therefore, the Court dismisses Plaintiff's § 1983 claims against the City.

11    Nonetheless, the Court must dismiss the claims without prejudice and grant Plaintiff

12    leave to amend his complaint to allege a practice, policy, or custom that was the moving

13    force behind a deprivation of his constitutional rights. *See AE ex rel. Hernandez*, 666

14    F.3d at 637.

15    **C.**    **Criminal Records Privacy Act Claim**

16        The Criminal Records Privacy Act (the "CRPA") generally prohibits the retention

17    or mechanical reproduction of "nonconviction data" by any person other than the subject

18    of the record. RCW 10.97.080. It also prohibits criminal justice agencies from

19

20 ――――――――――――――――

21      [2] Plaintiff does allege that Officer Aldridge subsequently violated Washington's Criminal Records Privacy Act; but the subsequent violation of a state law is insufficient to suggest that the City's failure to reprimand was deliberately indifferent to potential future violations of Plaintiff's

22    constitutional rights.

1   disseminating "criminal history record information" unless the record also states the

2   disposition of the charge when the request for information was made. RCW 10.97.040.

3        "Nonconviction data," is defined as:

4        [A]ll *criminal history record information* relating to an incident which has
         not led to a conviction or other disposition adverse to the subject, and for
5        which proceedings are no longer actively pending.

6   RCW 10.97.030(8) (emphasis added). "Criminal history record information" is defined

7   as:

8        [A]ny information contained in records maintained by or obtained from
         criminal justice agencies, other than courts, which records provide
9        individual identification of a person together with any portion of the
         individual's record of involvement in the criminal justice system as an
10       alleged or convicted offender, except . . . [i]ntelligence, analytical, or
         investigative reports and files.

11  RCW 10.97.030(4), (4)(h). The CRPA creates a civil cause of action for damages and

12  injunctive relief for violations thereof. RCW 10.97.110.

13       Defendants do not argue that the alleged dissemination of records describing the

14  investigation and arrest of Plaintiff was properly made under RCW 10.97.070(1) or some

15  provision of RCW 10.97.050. Instead, Defendants argue that under RCW

16  10.97.030(4)(b), the police reports are not "criminal history record information" and are

17  therefore not subject to the rules set forth in the CRPA for proper dissemination. Dkt. 9 at

18  11–13.

19       Without examining the reports themselves, the Court cannot be certain that they

20  do not contain nonconviction data. The Washington Supreme Court has "held that when a

21  party requests a mix of data with both nonconviction and other information, the

22

1    nonconviction data should be redacted and the remainder produced." *Sargent v. Seattle*

2    *Police Dep't*, 179 Wn.2d 376, 400 (2013) (citing *Bainbridge Island Police Guild v. City*

3    *of Puyallup*, 172 Wn.2d 398, 421–24 (2011)). Plaintiff has sufficiently alleged that the

4    police records disseminated by Defendants included nonconviction data and unredacted

5    personal identifiers. Dkt. 1 at 6. He also alleges that (1) the City failed to make necessary

6    inquiries to the Washington State Patrol prior to dissemination and (2) the disseminated

7    records did not include the disposition of the charges against him. Dkt. 1 at 9–10.

8          Defendants indicate that *Bainbridge Island Police Guild* was decided prior to the

9    2012 amendment of RCW 10.97.030, which now expressly excludes "intelligence,

10   analytical, or investigative reports and files" from the definition of "criminal history

11   record information." Dkt. 9 at 13 (citing Laws of 2012, ch. 125, § 1, *codified as amended*

12   *at* RCW 10.97.030(4)(h); House Bill Report, ESB 6296). They argue that RCW

13   10.97.030(4)(h) now renders police incident reports and any information therein exempt

14   from the CRPA's limitations on the dissemination of nonconviction data. *Id.* However,

15   when deciding *Bainbridge Island Police Guild*, the Washington Supreme Court

16   interpreted the CRPA consistently with the definition of "criminal history record

17   information" set forth in RCW 43.43.705. Under *Bainbridge Island Police Guild*, the

18   exact same language now found in RCW 10.97.030(4)(h) was already imputed to the

19   CRPA's definition of "criminal history record information." *Bainbridge Island Police*

20   *Guild*, 172 Wn.2d at 423. Therefore, the rule in *Bainbridge Island Police Guild* remains

21   unaffected by the 2012 amendment to RCW 10.97.030; investigative records can be

22

1   reproduced and maintained, but any nonconviction data therein must be redacted pursuant

2   to the CRPA. 172 Wn.2d 421–24.

3          Because investigative reports can include nonconviction data that must be

4   redacted, the Court denies Defendants' motion to dismiss the CRPA claims.

5   **D.     Punitive Damages**

6          Defendants also move to dismiss several of Plaintiff's requests for punitive

7   damages. Dkt. 9 at 9. The City argues that punitive damages are not available against the

8   City on Plaintiff's § 1983 claims. *Id.* at 9–10. Defendants also argue that punitive

9   damages are not available for Plaintiff's state law claims. *Id.* at 10–11. In a § 1983 action,

10  punitive damages against a municipality are unavailable as a matter of law. *Hofschneider*

11  *v. City of Vancouver*, 3:15-CV-05903-RBL, 2016 WL 1597117, at *7 (W.D. Wash. Apr.

12  21, 2016); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 (9th Cir. 1999) (citing

13  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)). Also, punitive damages are

14  not permitted under Washington law unless expressly authorized by statute. *Dailey v. N.*

15  *Coast Life Ins. Co.*, 129 Wn.2d 572, 575 (1996).

16         Plaintiff agrees that punitive damages are unavailable on his § 1983 claim against

17  the City. Dkt. 11 at 12. Plaintiff fails to address Defendants' argument to dismiss his

18  requests for punitive damages on the state law claims. Plaintiff's response simply states:

19  "Plaintiff is not seeking punitive damages against the City. Instead, it [sic] is seeking

20  punitive damages against Officer Aldridge on its [sic] federal claims." *Id.*

21         The Court accepts Plaintiff's admission that punitive damages are unavailable

22  against the City under § 1983. The Court also considers Plaintiff's failure to file

opposition to Defendants' motion to dismiss requests for punitive damages on state law claims as an admission that the motion has merit. *See* Local Rules W.D. Wash. LCR 7(b)(2). Accordingly, the Court dismisses Plaintiff's requests for punitive damages under his state law claims. *See* Dkt. 1 at 8–9. The Court also dismisses Plaintiff's requests for punitive damages against the City under his § 1983 claims. *See* Dkt. 1 at 7–8.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 9) is **GRANTED in part** and **DENIED in part** as follows:

1. Defendants' motion to dismiss is **GRANTED** as to Plaintiff's § 1983 claims against the City. Those claims are **DISMISSED without prejudice**.

2. Defendants' motion to dismiss certain requests for punitive damages is **GRANTED**. Plaintiff's requests for punitive damages on (1) his § 1983 claims against the City and (2) his state law claims are **DISMISSED with prejudice**.

3. Plaintiff is **GRANTED leave to amend** his complaint to properly allege § 1983 claims against the City.[3]

4. Defendants' motion to dismiss is **DENIED** on the CRPA claims.

Dated this 28th day of October, 2016.

BENJAMIN H. SETTLE
United States District Judge

---

[3] The Court notes that, if amendment cannot be done at this time, this order will not prevent Plaintiff from amending his complaint at a later time under Fed. R. Civ. P. 15.